IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RETAILMENOT, INC.,    )
            )
    Plaintiff,   )
            )
    v.      ) C.A. No. _____
            )
MAVATAR TECHNOLOGIES INC., )
            )
    Defendant.  )

**MOTION TO COMPEL MAVATAR TECHNOLOGIES INC.
TO COMPLY WITH RETAILMENOT'S SUBPOENAS**

Plaintiff RetailMeNot, Inc. ("RetailMeNot") hereby moves for an order compelling Mavatar Technologies, Inc. ("Mavatar") to comply with RetailMeNot's subpoenas seeking documents and testimony in connection with *RetailMeNot, Inc. v. Honey Science Corp.*, No. 18-cv-00937-CFC-MPT (D. Del).[1]  The subpoenas, attached hereto as Exhibit 1, were served in the above-cited case on May 31, 2019.  Mavatar is a non-party that exclusively possesses information relevant to the parties' claims and defenses, including information demonstrating the invalidity of Honey Science Corp.'s ("Honey") U.S. Patent No. 10,140,625, which is the basis of Honey's patent-infringement counterclaim.  (*See* D.I. 28,[2] Honey's Answer and First Amended Counterclaims, at Counterclaim Nine.)

The subpoenas issued in and require compliance in the District of Delaware, which is where Mavatar is incorporated and is therefore subject to service.  (*See* Ex. 1, 5/31/19

---

[1] Pursuant to D. Del. L.R. 7.1.1, counsel for RetailMeNot avers that it has made a reasonable effort to reach agreement with counsel for Mavatar on the matters set forth in this Motion, but no agreement could be reached.

[2] Citations to docket entries refer to filings in the action in which the subpoenas were issued, *RetailMeNot, Inc. v. Honey Science Corp.*, No. 18-cv-00937-CFC-MPT (D. Del).

RetailMeNot's Notice of Subpoenas.)   To date, however, Mavatar has not produced **any** materials or even responded to RetailMeNot's recent inquiries regarding the status of Mavatar's compliance.   (*See* Ex. 5, Email Correspondence between J. Carter and V. Summerfield, at 1.) Accordingly, pursuant to Rules 37(a)(2) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure, RetailMeNot must respectfully request this Court to compel Mavatar to comply with RetailMeNot's requests for both deposition testimony and the production of documents, as set forth in the subpoenas.

## I.   BACKGROUND

RetailMeNot and Defendant Honey are competitors in the business of aggregating online digital offers (*e.g.*, digital coupon codes, discounts, and rebates).   In the underlying action, RetailMeNot sued Honey for infringement of four U.S. Patents covering various technologies relating to web applications, including online shopping and merchant offers.   (*See* D.I. 1, RetailMeNot's Complaint.)   Honey counterclaimed for infringement of U.S. Patent No. 10,140,625 ("Honey's Asserted Patent," attached as Exhibit 2) relating to methods for interfacing with a third-party website.   (*See* D.I. 28, Honey's Answer and First Amended Counterclaims, at Counterclaim Nine.)   One of RetailMeNot's primary defenses to Honey's infringement counterclaim is that certain prior art renders Honey's Asserted Patent invalid.   One such prior-art reference is United States Patent Application No. 15/339,181 to Susan Akbarpour Mashadi ("Mashadi").   (Ex. 6, Mashadi; D.I. 149-2, at 315, 996–1108 (RetailMeNot's Initial Invalidity Contentions).)   Mavatar is the assignee of the Mashadi application, and Mavatar has developed embodiments of the technology that Mashadi discloses.   (Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas, at Exhibits A–F.)   On information and belief, Susan Akbarpour Mashadi is the Co-Founder and current CEO of Mavatar.   (*See* Ex. 11, Printout of https://mavatar.com/company/team/.)

On April 9, 2019, RetaiMeNot served a subpoena to Mavatar requesting source code related to certain Mavatar products, as well as documents sufficient to establish when those products first became publicly available.  (Ex. 3, 4/9/19 RetailMeNot's Notice of Subpoenas.) Mavatar responded on April 17, 2019.  (Ex. 12, 4/17/19 Letter from V. Summerfield to J. Carter.) After meeting and conferring with Mavatar on April 23 and April 30, 2019 (*see* Ex. 9, Email Correspondence Between J. Carter and V. Summerfield; Ex. 10, Email Correspondence Between J. Carter and V. Summerfield.), RetailMeNot altered the applicable dates for relevant documents at Mavatar's request and agreed to narrow the scope of the subpoenas.  Carter Decl. ¶ 6.  On May 31, 2019, RetailMeNot served amended subpoenas on Mavatar, which are the subject of the instant motion to compel.  (Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas.)  The amended subpoenas substantially narrowed RetailMeNot's document requests based on the parties' April 30, 2019 meet-and-confer.  Carter Decl. ¶ 6.  For example, RetailMeNot amended its earlier request for documents sufficient to show "the design, development, architecture, operation, and functionality" of the relevant products, to request documents sufficient to show only "the operation and functionality" of those products.  (*Compare* Ex. 3, 5/23/19 RetailMeNot Supoena, *with* Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas.)  In addition, rather than referring to Mavatar's products generally, the amended subpoenas attached the Mashadi patent application and requested only documents related to Mavatar's commercial embodiments of Mashadi.  (Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas at Definitions, Exhibit B.)  The subpoenas requested that Mavatar produce the specified documents by June 20, 2019, followed by deposition testimony related to those documents on July 1, 2019.  (Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas.)  Mavatar responded on June 13, 2019 with broad, largely

boiler-plate objections but did not otherwise indicate that it would not comply with the subpoenas.  (Ex. 4, 6/13/19 Letter from V. Summerfield to J. Carter.)

Following receipt of Mavatar's June 13, 2019 objections, RetailMeNot's counsel persistently followed up to resolve those objections, including by requesting that the parties meet and confer several times between June and August, 2019.  (Ex. 5, Email Correspondence between J. Carter and V. Summerfield, at 3, 4, 7, 8.)  In a further attempt to reach a compromise and minimize the burden on Mavatar, RetailMeNot agreed to Mavatar's proposal to first produce a summary chart showing the release dates of various versions of Mavatar's products and the corresponding changes associated with each version so that RetailMeNot could potentially identify a subset of documents and code to be produced in response to its May 31, 2019 subpoenas.  Carter Decl. ¶ 10.  In the six-month period that followed, Mavatar repeatedly represented that it would produce the agreed-upon chart, including as recently as December 6, 2019, but to date, Mavatar has not produced that chart or any other materials in response to RetailMeNot's subpoenas.   (Ex. 5, Email Correspondence between J. Carter and V. Summerfield, at 2, 3; Carter Decl. ¶ 11.)  Mavatar never sought to quash RetailMeNot's subpoenas (nor would Mavatar have good-faith grounds to do so).  Nevertheless, Mavatar has stopped responding to RetailMeNot's most recent follow-up inquiries.  (Ex. 5, Email Correspondence between J. Carter and V. Summerfield, at 1.)

RetailMeNot has repeatedly accommodated Mavatar's schedule and requests.  (*See id.*) But it is now clear that Mavatar does not intend to comply with the subpoenas in any fashion, and Mavatar's continued delays and non-responsiveness can only be considered an attempt to avoid compliance.  With fact discovery closing in the underlying litigation on January 17, 2020, RetailMeNot is left with no choice but to seek the Court's intervention.  Thus, RetailMeNot

respectfully moves this Court to compel Mavatar to produce the documents and appear for a deposition as set forth in RetailMeNot's May 31, 2019 subpoenas.

## II.    LEGAL STANDARD

Rule 45 of the Federal Rules of Civil Procedure allows a party to issue a subpoena to command a non-party to produce documents or tangible things in its possession, custody, or control.  Fed. R. Civ. P. 45.  The scope of discovery through a subpoena is the same as under Rules 26 and 34 of the Federal Rules of Civil Procedure.  *See* 9A Charles Alan Wright et al., Federal Practice and Procedure § 2452 (3d ed. 2019) (citing cases).  A party may obtain discovery of any non-privileged matter that is relevant to any claims or defenses.  Fed. R. Civ. P. 26(b)(1).  "It is well recognized that the federal rules allow broad and liberal discovery."  *Pacitti v. Macy's,* 193 F.3d 766, 777 (3d Cir. 1999); *see also Edward D. Ioli Trust v. Avigilon Corp.,* C.A. No. 2:10-CV-605-JRG, 2012 WL 5830711, at *1 (E.D. Tex. Nov. 16, 2012) (explaining that "the rules of discovery are accorded a broad and liberal application").

Rule 26 limits discovery where the burden of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(1) and (2).  Moreover, "[c]ourts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery."  *Kone Corp. v. ThyssenKrupp USA, Inc.,* C.A. No. 11-465-LPS-CJB, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011); *see also Samuel, Son & Co. v. Beach,* C.A. No. 13-128, 2013 WL 4855325, at *3 n.1 (W.D. Pa. Sept. 11, 2013) ("[T]he recent trend among district courts in the Third Circuit favors application of a good cause or reasonableness standard to resolve motions for expedited discovery . . . ." (internal quotation marks omitted)).  A non-party commanded to produce documents and tangible things may serve objections to the subpoena.

Fed. R. Civ. P. 45(d)(2)(B).  But unless the non-party has an adequate excuse, it must obey a valid subpoena.  *See* Fed. R. Civ. P. 45(g) ("The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena.").  Moreover, "courts generally require a motion to quash to be made in the 14 days required to object to a subpoena under Fed. R. Civ. P. 45(c)(3)(B), or by the close of the compliance listed in the subpoena."  *PHL Variable Ins. Co. v. Alan Wollman Ins. Trust*, C.A. No. 08-53-JJF, 2010 WL 2836388, at *1 (D. Del. Jul. 16, 2010) (citing *W. Coast Life Ins. Co. v. Life Brokerage Partners, LLC*, C.A. 08-80897-SLR, 2010 WL 181088 (D. Del. Jan. 19, 2010); *Ace Hardware Corp. v. Celebration Ace Hardware, LLC*, C.A. No. 09-66-SLR, 2009 WL 3242561 (D. Del. Oct. 8, 2009)).

Rule 37 provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  The proper venue in which to file a motion to compel a non-party to comply with a subpoena is "the district where compliance is required."  Fed. R. Civ. P. 45(d)(2)(B)(i).  Because the subpoenas at issue here require Mavatar to produce documents and appear for a deposition in Delaware, venue is proper in this Court.

## III.   ARGUMENT

In determining the propriety of a subpoena, courts balance the relevance of the discovery sought, the requesting party's need, and the potential hardship to the non-party.  *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed. Cir. 1986).  Here, as explained below, (1) the requested discovery is highly relevant to RetailMeNot's invalidity defense; (2) RetailMeNot cannot obtain the discovery from any other source; and (3) there is little hardship to Mavatar, particularly given RetailMeNot's willingness to narrow its requests and provide Mavatar additional time for compliance.

### A.    The Requested Discovery Is Relevant to the Invalidity of Honey's Asserted Patent

RetailMeNot's requests are highly relevant to its defense and counterclaim in the underlying litigation that Honey's asserted patent is invalid.[3]   Specifically, the Mashadi application—titled "System and Method for Consumer Management Purchasing and Account Information"—is one of the primary references RetailMeNot relies upon for its invalidity defense.   (Ex. 6, Mashadi; D.I. 149-2, at 315, 996–1108 (RetailMeNot's Initial Invalidity Contentions).)   Among other things, Mashadi relates to methods and systems that "facilitate[] a platform for online purchasing and account management," including "a universal shopping cart component, a social networking marketplace, identity and profile management, and a privacy patrol component."   (Ex. 6, at Abstract.)   Mashadi is assigned to Mavatar, and RetailMeNot understands that Mavatar developed embodiments of Mashadi.[4]

RetailMeNot has explained in its Initial Invalidity Contentions, for example, how Mashadi demonstrates the invalidity of Honey's Asserted Patent.   (*See* D.I. 149-2, at 315, 996–1108 (RetailMeNot's Initial Invalidity Contentions).)[5]   In response, Honey has argued that the

---

[3]   Relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).   "Where there is doubt over relevance, [Rule 26(b)(1)] indicates that the court should be permissive."  *Heat & Control*, 785 F.2d at 1024.   "[W]hen the material sought is minimally relevant the burden is on the party opposing discovery to show that it is not relevant."  8 Charles Alan Wright et al., Federal Practice and Procedure § 2008 (3d ed. 2019) (citing cases).

[4]   Mavatar has never denied that it has developed commercial embodiments of Mashadi.  Carter Decl. ¶ 13.

[5]   RetailMeNot has also submitted multiple petitions to the United States Patent and Trademark Office (USPTO) for Inter Partes Review ("IPR") (D.I. 149-2, at 2 (Petition, IPR2019-01565) and Post Grant Review ("PGR") (D.I. 149-2, at 99 (Petition, PGR2019-00061) of Honey's Asserted Patent on the ground that Mashadi invalidates certain claims of Honey's Asserted Patent.   Notably, the USPTO recently issued final rejections for two of Honey's related patent applications based on Mashadi.   (D.I. 149-2, at 1564–1580 (U.S. Patent App. No.

embodiments disclosed in Mashadi are "fundamentally different" from Honey's Asserted Patent. (Ex. 7, IPR2019-01565, Patent Owner's Preliminary Response, at 1.)  For example, Honey contends "Mashadi does not disclose 'a system coupled to a public network configured to cause the numerical value to change when one or more digital codes are transmitted to the third party website, wherein the one or more digital codes enable the numerical value to change,'" as required by claim 1 of the Honey Asserted Patent.  (Ex. 7, IPR2019-01565, Patent Owner's Preliminary Response, at 17.)  Specifically, Honey argues that Mashadi's system changes a numerical value only in a "universal shopping cart, *not the third party webpage*."  (Ex. 7, IPR2019-01565, Patent Owner's Preliminary Response, at 16) (emphasis added).  While RetailMeNot disagrees,[6] this dispute illustrates the relevance of Mashadi—including Mavatar's commercial embodiments of Mashadi—to the invalidity of Honey's Asserted Patent.

For example, public documents indicate that Mavatar's embodiments of Mashadi search for "valid promo codes" and "appl[y] the savings automatically at checkout" (Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas, at Exhibit B), to change the numerical value *within the Mavatar extension's shopping cart and directly in the merchant's shopping cart*, as shown below.

---

16/172,685, 9/24/19 Office Action); *Id*., at 1527–1544 (U.S. Patent App. No. 16/403,036, 9/23/19 Office Action).)

[6]   *See*, *e.g.*, D.I. 149-2, at 25–28 (Petition, IPR2019-01565).  The USPTO has also disagreed with Honey's position.  In fact, in multiple related Honey patent applications, the USPTO quoted verbatim from RetailMeNot's IPR Petition.  (D.I. 149-2, at 1569 (U.S. Patent App. No. 16/172,685, 9/24/19 Office Action); *id.*, at 1532 (U.S. Patent App. No. 16/403,036, 9/23/19 Office Action).)





(*Id.*, at Ex. D.)  The documents that RetailMeNot seeks from Mavatar will likely explain in greater detail whether and how Mavatar's products meet the elements of Honey's Asserted Patent—*e.g.*, whether Mavatar's system "cause[s] the numerical value to change" and in what location.  (Ex. 2, Honey Asserted Patent, at Claim 1; Ex. 7, IPR2019-01565, Patent Owner's Preliminary Response, at 16.)  In addition, Mavatar's embodiments of Mashadi may constitute additional prior art that separately invalidate Honey's Asserted Patent.

Mavatar has acknowledged that it has responsive materials related to embodiments of Mashadi in its possession, and as discussed above, Mavatar even offered at one time to provide a table summarizing those materials.  (Ex. 5, Email Correspondence between J. Carter and V. Summerfield, at 3; Carter Decl. ¶ 13.)  Such documents are directly relevant to RetailMeNot's invalidity defense in the underlying litigation, and Mavatar has never disagreed.  Carter Decl. ¶ 13.  Instead, Mavatar has simply decided to ignore RetailMeNot's subpoenas.

### B.   RetailMeNot Needs Documents and Testimony from Mavatar Because It Cannot Obtain the Relevant Information Elsewhere

Mavatar is the only entity in possession of documents and source code related to embodiments of the Mashadi reference.  In determining the propriety of a subpoena, courts consider "the requesting party's need" for the material sought.  *Heat & Control,* 785 F.2d at 1024.  This favors the enforcement of a subpoena when the information sought is in the exclusive possession of the subpoenaed party.  *See, e.g., In re Subpoena to Non-Party OPI Products, Inc.*, No. CV 13-8534, 2014 WL 12610196, at *2 (C.D. Cal. Jan. 2, 2014) (concluding that the requesting party "needs to get the information from OPI because OPI is the only entity that has access to it"); *see also American Standard Inc. v. Pfizer Inc.,* 828 F.2d 734, 743 (Fed. Cir. 1987) ("Need is enhanced when information is uniquely available from the party from whom it is sought.").

While publicly available documents offer glimpses into the functionality of Mavatar's commercial embodiments, only Mavatar's internal documents and source code can provide the full picture, and Mavatar has never contended otherwise.[7]  (*See* Ex. 1, 5/31/19 RetailMeNot's Notice of Subpoenas, at Exhibits B–F.)  RetailMeNot thus has no other means by which to obtain the requested discovery, and Mavatar should be ordered to produce it.  *See Heat & Control,* 785 F.3d at 1024–25 (holding that the "need" factor was met where the party objecting to the subpoena offered no "specific evidence" that the information being sought was "available from other sources").  If, on the other hand, Mavatar is allowed to ignore the subpoenas, RetailMeNot will be unfairly prejudiced in its ability to discover additional information relevant to its invalidity defense.

### C.    Mavatar Has No Credible Claim of Hardship

While courts consider "the potential hardship of the party subject to the subpoena," *Heat & Control*, 785 F.2d at 1024, Mavatar can claim no such hardship here.  Other than its initial, boilerplate objections, Mavatar has never indicated that providing the requested discovery would be overly burdensome in the generous time frame RetailMeNot provided for compliance. *DatCard Sys., Inc. v. PacsGear, Inc.,* No. 11-mc-0025 (DSD/SER), 2011 WL 2491515, at *2 (D. Minn. Apr. 25, 2011) (explaining that "barebones claims of hardship are inadequate"); *Plant Genetic Sys., N.V. v. Northrup King Co., Inc.,* 6 F. Supp. 2d 859, 862 (E.D. Mo. 1998) (concluding that a third party would "not be unduly burdened by compliance with the . . . subpoenas" where it had "done little more than make the bare assertion that it is burdensome for it to comply.").  On the contrary, Mavatar's own actions—*e.g.*, agreeing to provide a summary

---

[7]    Notably, the only other party to the underlying litigation—Honey—is itself seeking discovery from Mavatar through its own subpoena, though to date, RetailMeNot understands that Mavatar has likewise produced nothing in response to Honey's subpoena.  (Ex. 8, 5/23/19 Honey's Notice of Subpoena.)

chart of its product versions and attributes to aid RetailMeNot in specifically identifying the materials of interest—acknowledge that RetailMeNot's requests do ***not*** impose undue hardship. Furthermore, the materials that RetailMeNot seeks—"articles, operations guides, marketing literature, source code, and press releases"—are documents kept "in the ordinary course of business," which normally "would not be overly burdensome . . . to compile and produce." *In re Subpoena to Non–Party Opi Prods.*, 2014 WL 12610196, at *2.  And in response to Mavatar's objection that it would take "hours, possibly days" to find the requested discovery (Ex. 4, 6/13/19 Letter from V. Summerfield to J. Carter), RetailMeNot has generously given Mavatar over ***six months*** to comply with the subpoenas.  Mavatar thus cannot make any credible claim the requested discovery imposes undue hardship given the substantial time it has had to comply with RetailMeNot's subpoenas, and it should be ordered to do so.

## IV.    CONCLUSION

For the foregoing reasons, RetailMeNot respectfully moves the Court to compel Mavatar to produce the requested discovery and appear for a deposition, as set forth in RetailMeNot's subpoenas.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

_____

Jack B. Blumenfeld (#1014)
Jeremy A. Tigan (#5239)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jtigan@mnat.com

*Attorneys for Plaintiff*

OF COUNSEL:

Robert A. Appleby
Jeanne M. Heffernan P.C.
Jon R. Carter
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4611
(212) 446-4800

January 13, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on January 13, 2020, upon the following in the manner indicated:

Victoria D. Summerfield, Esquire                         *VIA ELECTRONIC MAIL*
PEPPER HAMILTON LLP
Union Trust Building
501 Grant Street, Suite 300
Pittsburgh, PA 15219-4429
*Attorneys for Defendant*

Kelly E. Farnan, Esquire                                   *VIA ELECTRONIC MAIL*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Honey Science LLC*

Tara D. Elliott, Esquire                                    *VIA ELECTRONIC MAIL*
Will Orlady, Esquire
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
*Attorneys for Honey Science LLC*

Lisa K. Nguyen, Esquire                                   *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA  94025
*Attorneys for Honey Science LLC*

Robert Steinberg, Esquire                                 *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA  90067
*Attorneys for Honey Science LLC*

Thomas W. Yeh, Esquire                          *VIA ELECTRONIC MAIL*
LATHAM & WATKINS LLP
355 South Gr and Avenue, Suite 100
Los Angeles,  CA 90071-1560
*Attorneys for Honey Science LLC*


*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)